UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| QUANARDEL WELLS, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 2:17-cv-00460-JMS-MJD |
| DICK BROWN, | ) ) ) |
| Respondent. | ) |

**Entry Granting Petition for Writ of Habeas Corpus and Directing Entry of Final Judgment**

The petition of Quanadrel Wells for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. WVE 16-12-0031. For the reasons explained in this Entry, Mr. Wells's habeas petition must be **granted**.

A. Overview

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss*, 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied by the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

### B. The Disciplinary Proceeding

On December 13, 2016, Investigator Randy VanVleet wrote a Report of Conduct that charged Wells with Class A offense 113, Trafficking. The Conduct Report stated:

> On 12/8/16, I, Investigator Randy VanVleet, was conducting a final interview with Quanardel Wells #881139 about an on-going trafficking investigation. During the interview, Wells admitted a former staff member brought him candy, chips, cheese and other foods for him to consume.

Investigator VanVleet provided a separate Report of Investigation of Incident that stated the following:

> On 9-12-16, Offender Quanadrel [sic] #881139 was placed in Restricted housing for investigation purposes. During the initial interview, he denied any trafficking of narcotics or other contraband. He said occasionally he would get a piece of candy from a certain staff member. That staff member was brought up for an interview and quit her contractual job with Aramark in the middle of the investigation. Offender Wells was maintained in RHU and he began writing this staff member. [It] was obvious by the letters that they were in a relationship with each other.
>
> On 12-8-16, I, along with Investigator Travis Davis, interviewed Wells again about this staff member. Wells admitted she brought him candy, chips, cheese and other food items for him to consume. In conclusion, Wells has violated code A-113 (trafficking IC 35-44.1.3.5).

Class A offense 113, Trafficking, is defined as "[e]ngaging in trafficking (as defined in IC 35-44.1-3-5) with anyone who is not an offender residing in the same facility." The cited statute relevantly provides that "(b) [a] person who, without the prior authorization of the person in charge of a penal facility or juvenile facility, knowingly or intentionally: (1) delivers, or carries into the penal facility or juvenile facility with intent to deliver, an article to an inmate or child of the facility … commits trafficking with an inmate, a Class A misdemeanor." Ind. Code. § 35-44.1-3-5(b)(1).

On December 14, 2016, Wells was notified of the charge of Class A offense 113, Trafficking, when he was served with the Conduct Report and the Notice of Disciplinary Hearing. Wells was notified of his rights, pleaded not guilty, and waived 24-hour notice of the hearing. He requested and was provided the assistance of a lay advocate. At screening Wells did not request any witnesses or physical evidence, and he remarked "evidence show I was having a relationship to the Aramark staff."

Investigator Travis Davis reported by email on December 16, 2016, that he interviewed Wells along with Investigator VanVleet. "During the interview offender Wells did admit to us that a former staff member did bring him in things to eat. He said the former staff member would bring in candy, chips, cheese and things like that for him to consume."

The hearing officer conducted a disciplinary hearing in WVE 16-12-0031 on December 20, 2016. Wells said "I hope they took what I said the wrong way. They give us food/leftovers after Aramark dinners. Why didn't they record the conversation[?]" The hearing officer found Wells guilty of Class A offense 113, Trafficking. The hearing officer considered staff reports and Wells's statement. The sanctions were a written reprimand, one-month loss of telephone privileges, six months in disciplinary restrictive housing, an earned credit time deprivation of 60 days, a one-level demotion in credit class, and imposition of a suspended sanction from case number WVE 16-09-0063, which was also a one-level demotion in credit class.

Mr. Wells appealed to Facility Head and the IDOC Final Reviewing Authority; both appeals were denied. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

C.    Analysis

Wells challenges the disciplinary action against him arguing that he did not have a fair and impartial decision-maker and the evidence is insufficient. Because Wells has shown that his decision-maker was not impartial, the Court need not address his other claims.

Wells first argues that he was denied an impartial decision-maker. A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary in order to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 Fed. Appx. 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Wells argues that the hearing officer was impartial because the hearing officer had been instructed on how to rule at the hearing. The respondent does not dispute this assertion, but argues that because the hearing officer was not involved in the events or the investigation, then he was not impartial. But that is just an example of how a hearing officer might not be impartial.

It is not the only way to show partiality. If the hearing officer had predetermined the outcome of the hearing before any evidence was presented, he necessarily was not impartial.

The respondent does not argue, but suggests, that because the evidence was sufficient to support Wells's disciplinary conviction, that he necessarily was not denied an impartial hearing officer. To the extent that this can be understood to be an argument that any error on this issue was harmless, the Seventh Circuit has explained that it has found no authority to support the "position that allowing a biased tribunal to preside over a prison discipline hearing can be harmless error. . . ." *Daher v. Vannatta*, 118 F. App'x 981, 984 (7th Cir. 2004) (citing *Oswald v. Bertrand,* 374 F.3d 475, 482 (7th Cir. 2004); *Giano v. Sullivan,* 709 F.Supp. 1209, 1217–18 (S.D.N.Y. 1989).

Wells has presented evidence that his hearing officer had decided the outcome of the disciplinary charges against him before the hearing took place and the respondent has not presented any evidence to dispute this. Accordingly, Wells has shown that his hearing officer was not impartial and he is entitled to habeas relief on this basis.

### D. Conclusion

For the foregoing reasons, Wells's petition for a writ of habeas corpus is **granted**. The disciplinary charges in WVE 16-12-0031 shall be **VACATED** and the sanctions **RESCINDED**. The credit time lost shall be restored immediately.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 5/9/2018

*[signature]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

QUANARDEL WELLS
881139
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Frances Hale Barrow
INDIANA ATTORNEY GENERAL
frances.barrow@atg.in.gov